**MARION SELTZER**
Attorney-at-Law
1725 York Avenue Suite 16B
New York, New York 10128


Telephone: (212) 289-8798          Email: MarionSeltzer23@gmail.com
Florida: (561) 508-3951                              cell: (917) 922-8640

April 20, 2017

By ECF

The Honorable Dora L. Irizarry
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United State v Nimboko Miller
                   Criminal Docket No. 16-034 (DLI)

Dear Chief Judge Irizzary,

      On behalf of my client Nimboko Miller, I submit this letter in response to the government's motion *in limine* dated March 27, 2017 which (a) seeks to limit cross-examination of a witness referred to as CC-2, and b) seeks to admit hearsay evidence at the trial scheduled to begin on July 10, 2017 .

      **I**    In Part B of its March 27, 2017 submission the government disclosed certain *Giglio* material pertaining to CC-2.   That material includes two arrests of CC-2 neither of which resulted in conviction.   One arrest involved personal use of cocaine at age 19 and the other a physical altercation with a boyfriend  ten years later. The government also disclosed that CC-2 had used marijuana on occasion a  teenager.

      We do not intend to cross-examine CC-2 about either of her two arrests or of her teenage

use of marijuana. I agree with the government that these arrests do not affect the witness's character for truthfulness, that they are irrelevant to any issue at trial, and that bringing this information before a jury will not be helpful to my client's defense.

**II**  The government also seeks to introduce text messages between someone identified as "Miller" who they believe to be my client and CC-2 (who is a co-worker of Miller's at the NYC Transit Authority). These texts were attached to the governments submission as Exhibit A. None of the  messages in Exhibit A should be allowed into evidence as they are inadmissible hearsay and do not fall under any exception to the hearsay rule.. The government seeks to introduce the messages as  "admissions," under Fed. R. Evid. 801 (d) (2) or as direct evidence of the charged conduct.. Under the facts, the Federal Rules of Evidence,  and relevant cases, the court should not permit the text messages to be introduced into evidence.

The first text  is a single message dated  September 13, 2011 to a phone identified as "Miller"  from a sender who the government identifies as CC-2.   There is nothing in that message that connects anyone to the charges in this case or that is direct evidence of the charges. Nor is it an admission.

The text messages in Exhibit A then skip almost 1½ years to February 6, 2013, and then sporadically again through October 8, 2014.  It should be noted that the alleged fraud as charged in Count 1 of the Indictment occurred "between 2006 and November 2008."

The facts do not support the government's arguments. The government argues that the texts are admissions of an adverse party, and  show an "awareness of and involvement with the property."  The government also claims that the texts  indicate an agreement by Miller to buy back the property. However, the government fails to note any particular language of the text messages that support these conclusions.  In fact,  the government's inferences of what they believe the texts say and mean are inaccurate and misleading.  Allowing a jury to review the texts would be highly prejudicial, and lack any probative value based on the actual words that were used or any reasonable interpretation of what was written. Moreover, even if the court adopts the government interpretation (which it should not), the texts still fail to fall under any exception to the hearsay rule.

The government has taken a disconnected and sporadic series of text messages made over a 3-year period  and contrived an interpretation of them and created legal arguments unsupported by the facts and the law.

Rather than support the government's contentions, from information in previous discovery material, it appears that CC-2 purchased the house in Far Rockaway in 2008 and still owned it 5 years later in 2013.   Other discovery material has shown that CC-2 rented out the units in the multi- family property for years after she purchased it. The texts seem to indicate that she was facing bankruptcy in or around 2013 and that in order to help her avoid bankruptcy in

2013, Miller was helping her find a buyer for her property. On May 29, 2013, Miller did not know the exact address of the house.[1]

Despite the government's statements in Part D of their memo (at p. 7), there is nothing in the 2011 and 2012 text messages that discuss any fraudulent scheme to purchase the 309 Beach Street property or any discussion or promise to "buy it back."

The fact that the government proposes to redact parts of the text messages is even more harmful to Mr. Miller and confusing to the issues at hand. The government wishes to introduce into evidence bits and pieces of conversations out of context. On June 17, 2013, CC-2 also reveals that she is the person in possession of the account information for the mortgage and has presumably been paying the mortgage off during the 5 year period after the 2008 closing. The text messages indicate that Miller does not know the exact date the house was purchased, or the amount of the original loan.

Finally the government misconstrues the words used in the text messages sent in in October 2014 . After CC-2 says that *she* has been served with a subpoena, Miller advises her to ask the person who seeks to interview her to show his ID and to ask what agency this person works for. On October 3, 2014 Miller says

> "Hmmm. Sounds like an investigation.. Still you have done nothing wrong, you transferred the deed that's it, all perfectly legal as long as he is just asking questions, you can answer or not, but I would see what he wants at some point.

Then on October 8, 2014 after it seems the Federal agent has made or is attempting to make repeated contacts with CC-2, Miller suggests that she not speak to the agent because

> "he is trying to entrap you in a case that he knows if anything, you would be the victim."

The language in this last text message sounds a lot like an attorney advising a client who has been approached by law enforcement of her *Miranda* rights, rather than a guilty person making an admission or evidencing any personal consciousness of guilt.

These texts messages are not admissible under Fed. R. Evid. 404(b) as they do not show in regard to the 2008 purchase of the property by CC-2 , any evidence or knowledge by Miller of a fraud or a plan. Nor do they show any absence of mistake or consciousness of guilt by

---

[1] On June 17, 2013, CC-2 reveals that the person alleged to be Miller doesn't know the date the house was purchased. This text is confusing since there seem to be two banks ( Wells Fargo referred to on 9/1/11 and Citi Mortgage referred to on 6/17/13). There are also different locations referred to in the text messages.

Nimboko Miller.   The government confuses the fact that because at some point between 2011 - 2014 Miller was aware that his co-worker CC-2 had purchased the 309 Beach property five years earlier, then in 2011, 2012 or 2014, he must have had  knowledge of the fraud the government claims to have occurred five years earlier, or, that he understood that the transaction might have been a sham.

It is not manifestly clear that any of the blurbs of conversation in the text messages – not the ones from 2011, 2012, 2013, or 2014  are intrinsic proof of the charged crimes. Nor is it clear that any of the text messages are admissions, despite a claim by the government that they are. The texts are not prior out-of court statements that are inconsistent with his Not Guilty plea. They do not establish guilt, they are not confessions of any sort, and they are not declarations against interest. For these reasons, they are not admissions of a party opponent and do not fall under 801(d) (2).
.
Likewise, the government has failed to show for what purpose under Rule 404(b) the text messages are admissible.   The messages must be relevant to some disputed issue at trial and their probative value must not be substantially outweighed by the risk of unfair prejudice. Rules 402 and 403 require the court to evaluate probative value and prejudice.

As the Second Circuit stated in *United States v. Figueroa*. 618 F. 2d 934, 939, (1980)

> To be admissible the evidence must be relevant to some disputed issue in the trial, Fed.R.Evid. 404(b), and its probative value must not be substantially outweighed by the risk of unfair prejudice. Fed.R.Evid. 403; HN2 *United States v. Mohel*, 604 F.2d 748 (2d Cir. 1979); *United States v. Lyles*, 593 F.2d 182 (2d Cir. 1979); *United States v. Manafzadeh*, 592 F.2d 81 (2d Cir. 1979); *United States v. DeVaugn*, 579 F.2d 225 (2d Cir. 1978); *United States v. Benedetto*, 571 F.2d *States v. O'Connor*, 580 F.2d 38 (2d Cir. 1978); 1246 (2d Cir. 1978). The procedure for determining admissibility depends on the grounds on which the Government offers the evidence. If the evidence is offered to prove that the defendant committed the act charged in the indictment, for example, by proving identity or common scheme, the evidence may be offered during the prosecution's case-in-chief, unless the defendant's commission of the act is not a disputed issue. On the other hand, if the evidence is offered to prove the defendant's [**6]  knowledge or intent, the offer of similar acts evidence should await the conclusion of the defendant's case and should be aimed at a specifically identified issue. This enables the trial judge to determine whether the issue sought to be proved by the evidence is really in dispute and, if so, to assess the probative worth of the evidence on this issue against its prejudicial effect. *United States v. Danzey*, 594 F.2d 905 (2d Cir.), cert. denied, 441 U.S. 951, 99 S. Ct. 2179, 60 L. Ed. 2d 1056 (1979); *United States v. Halper*, 590 F.2d 422 (2d Cir. 1978); *United States v.*

> *Benedetto, supra*; *United States v. Leonard*, 524 F.2d 1076, 1092 (2d Cir. 1975), cert. denied, 425 U.S. 958, 96 S. Ct. 1737, 48 L. Ed. 2d 202 (1976).

Here, the government has failed to identify any fact or issue to which the text messages are relevant, nor have they established "a clear connection between the so-called 404(b) evidence and a disputed issue at trial. "To be sure, the admission of any evidence not directly related to the charged conduct has the potential to be prejudicial". *United States v. Mercado* 573 F 3d at 138,142 (2d Cir. 2009), U.S v Scott 677 F 3d 72, 79. To avoid potential prosecutorial abuse, the court of appeals has required the proponent of the evidence to demonstrate a close relationship between the proffered evidence and the evidence to be corroborated. The corroboration must be also be direct and the matter corroborated significant. *United States v Scott*, 677 F 3d 72, 79 (2d Cir. 2012).

**III**  Finally, the government attached as Exhibit B to its motion, a Memorandum and Order of Judge Vitaliano dated December 18, 2016 in *USA v Bayfield*, 14 CR 356 (ENV). Despite the fact that Bayfield was a mortgage fraud case, the facts in that case are different from those presented here. It seems that the property involved was Mr. Bayfield's personal residence purchased in someone else's name (Ms. or Mr. Surpis) in 2008. Mr. Bayfield continued to reside on the property and pay the mortgage after it was purchased by Surpis in 2008. In 2010 Mr. Bayliss stopped paying off the mortgage and Surpis sued him. Around that same time Bayliss filed a forged, back-dated document with the New York City Register which purported to transfer title to the property from Surpis to Bayfield himself.. While there were similar Federal Rules of Evidence involved in that matter, the Bayliss case is not probative of any issues before Your Honor as the facts are entirely distinguishable.

Since the government has not demonstrated any proper purpose that the text messages in Exhibit A are admissible, their motion *in limine* should be denied.

                                                Respectfully yours,

                                                *Marion Seltzer*

Copies: All counsel by ECF