UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
UNITED STATES OF AMERICA

-against-

16 CR 34 (AMD)

NIMBOKO MILLER

---------------------------------------------------------------x

# MEMORANDUM OF LAW

Dated: June 29, 2017

1

## STATEMENT OF FACTS

Nimboko Miller is charged in a two-count indictment with Conspiracy to Commit Bank Fraud between 2006 and 2008 and Bank Fraud in or about 2008 and October 2008  pursuant to 18 USC §§ 1349 and 1344.  The United States of America has charged that Nimboko Miller and others conspired between 2006 and 2008 and defrauded between 2008 and October 2008 Wells Fargo Bank N.A.  of  "money, funds ... by means by materially false and fraudulent pretenses."

The discovery provided by the government reveals that this trial involves one bank loan on a property located at 309 Beach 88th Street in Queens, New York.  The property was purchased by Andrea Murray on June 13, 2006.  Ms. Murray obtained a bank loan from Wells Fargo Bank in the amount of $413,250 and was the sole owner of the property until it was sold in 2013 for $5000. The defendant Nimboko Miller's name or signature does not appear on any of the bank or loan documents.

The defense expects to establish two defenses:

(1) That the government has failed to prove beyond a reasonable doubt that Nimboko Miller either conspired to or actually defrauded Wells Fargo Bank of any "money funds, etc. by materially false and fraudulent pretenses," and

(2) (a)That Wells Fargo Bank, the alleged victim was actually a co-conspirator and aider and abettor of Andrea Murray and the other unnamed co-conspirators in the indictment,

(b) that Wells Fargo Bank was not defrauded nor was there a conspiracy to defraud Wells Fargo Bank due to Wells Fargo Bank's bad acts which are described in Exhibits A and B which put them on notice either actually or by implication that the Andrea Murray loan documents were substantially flawed and that no properly-acting bank or bank official would or

2

should have extended a mortgage loan to Ms. Murray, and

c) That as part of the conspiracy charged, Wells Fargo Bank and others conspired and intended to defraud the U.S. Government and other mortgage insurance entities if and when the Andrea Murray loan went into default.

Between 2001 and December 2008  Wells Fargo Bank engaged in "reckless underwriting" and "shoddy underwriting practices to drive up loan volume,"  in order to "maximize profits."  "Even though Wells Fargo identified through internal quality assurance reviews thousands of problematic loans, the bank decided not to report them to HUD." (Ex. A p. 1)  Moreover, "Wells Fargo elected to hire temporary staff to churn out and approve an ever-increasing quantity of FHA loans, but neglected to provide this inexperienced staff with proper training... The bank also imposed short turnaround times for deciding whether to approve the loans, employed lax underwriting standards and controls and paid bonuses to underwriters and other staff based on the number or loans approved."  (Ex A p. 2, Ex. B. including Pages 4-6, and 8-9,

https://www.justice.gov/usao-sdny/pr/manhattan-us-attorney-announces-12-billion-settlement-its
-claims-against-wells-fargo).

The defense expects the evidence will show that not only was Wells-Fargo a co-conspirator in this case, but that the Wells Fargo loan officer, the bank's attorneys, the broker, the seller and others were all part of the conspiracy.  It is necessary to complete the picture of all the events surrounding Ms. Murray's bank loan that the court take Judicial Notice and/or admit the other proffered evidence pursuant to the applicable Federal Rule of Evidence.

It is the defendants position that one cannot steal from and/or defraud oneself.  If Wells.

3

Fargo Bank, the supposed victim in the indictment was actually a co-conspirator and by their acts solicited and were complicit in creating the bad bank loan not caring whether or not it would be repaid, then the allegations in the indictment that Wells Fargo was defrauded fails, (Exhibits A-E.) At the very least, it is evidence that the jury should consider.

This argument is especially relevant since Count One the conspiracy count, charges a conspiracy that allegedly occurred between **2006** and 2008. It is expected that the government will offer little or no evidence of any events prior to May or June 2008 and a few months thereafter. In order to establish all the facts of the alleged conspiracy, the defense believes that the jury must hear about the involvement of other co-conspirators including Wells Fargo Bank. The jury needs to be aware of the character and bad acts of the alleged victim (the bank) in order to evaluate the evidence. Moreover, once the jury learns that Wells Fargo Bank knew it would be reimbursed through federal insurance and other insurance programs if there was a default, it puts their actions in making the Murray loan in proper perspective. Unless the court admits the proffered exhibits, the jury will be denied the opportunity to adequately consider all the facts of this case and render a proper verdict and, the defendant will be denied his constitutional right to a fair trial.

## JUDICIAL NOTICE - and   OTHER RULES OF EVIDENCE

Pursuant to Rule 201 (b) (2) of the Federal Rules of Evidence, courts may take judicial notice of facts that are not subject to reasonable dispute and are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.

Court filings are just the kind of documents that are not subject to reasonable dispute and are capable of ready determination under Rule 201 (b)(2). Accordingly, it is proper for courts to

4

take judicial notice of the existence of such a document. *See Roe v Johnson,* 334 F. Supp 2d 415, 419-20 (SDNY 2004). A court may take judicial notice of public records, *Rothman v Gregor*, 220 F 3d 81 (2d Cir. 2000).

The court may take judicial notice of the attached exhibits or admit them under one of the other Federal Rules of Evidence referenced in the Notice of Motion. Exhibit B is the Stipulation and Order of Settlement and Dismissal in the case of *USA v Wells Fargo Bank and Kurt Lofrano*. This document is a public record the accuracy of which cannot be disputed by the Government or Wells Fargo Bank, since one signatory of the document is a party to *this* action and the other the alleged victim.  Moreover, since the document is taken from the ECF website of the Southern District of New York, it is self-authenticating and requires no extrinsic evidence of authenticity in order to be admitted. The statements in the "Stipulation" and in the other exhibits are relevant to a determination of at least two elements of the crime charged in each count, that is whether there was a conspiracy to defraud and/or whether the victim was actually defrauded.

Exhibit B can also be considered as an admission of a party opponent (The United States of America) who is the plaintiff in both cases. *See, Green v City of New York*, 465 F 3d 65 (2d Cir. 2004).  Exhibit B is signed by an Assistant U.S. Attorney in the SDNY on behalf of Preet Bharara the U.S. Attorney and by Wells Fargo Bank through their attorneys. It too is a public record, a statement against interest in this case, and it is self-authenticating.

Among other statements and admissions, the parties to Exhibit B stipulated that

> "During the period October 2005 to December 2010, Wells Fargo quality assurance reviews identified more than 2,900 additional FHA loans containing material findings per Wells Fargo Bank's internal application of the term "material."  During the period of October 2005 through December 31, 2010 based on its application and definition of the term "'material."  During the period of

5

October 2005 through December 31, 2010,  based on it application of the self-reporting policy referenced in Paragraph 3(g) above and by committee decision, Wells Fargo bank did not report to HUD the majority of the FHA loans that Wells Fargo Bank's internal quality assurance reviews had identified as having material findings per Wells Fargo's internal application and definition of the term "material."  When certain of these loans defaulted, insurance claims were paid out by Mutual Mortgage Insurance Fund." (Ex. B, p. 8).

At page 10 of the Stipulation and Order the parties agreed that in addition to a violation of various federal acts, Wells Fargo Bank had also committed

breaches under unjust enrichment, indemnification, fraud, money had an received, misrepresentation, deceit, mistake of fact, breach of fiduciary duty, conspiracy and aiding and abetting any of the foregoing, (Exhibit B,  p. 10.)

In return for the United States of America forgave  all the violations committed by Wells Fargo Bank, and Wells Fargo agree to pay a 1.2 *billion* fine. (Ex B, p. 8).

The U.S. Court of Appeals for the Fifth Circuit has held that.

Judicial notice may be taken of facts known at once with certainty by all the reasonably intelligent people in the community without the need of resorting to any evidential data at all.... Specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy may be judicially noticed. *Weaver v. United States*, 298 F 2d 496, 498-99 (5th Cir. 1962).

The court is entitled to take judicial notice of the legislative history of a bill, *See Territory of Alaska v. Am Can Co.* 358 U.S. 224, 226-27.  It is well established that U.S. District Courts are obligated to take judicial notice of the constitution and public laws from each state of the union, See *Mills v. Green* 159 U.S. 651, 657 (1895); *United States v Schmitt*, 748 F. 2d 249, 256 (5th Cir. 1984). It follows that the court can take judicial notice of the  bill itself  (TARP), Defendant's Ex. D, Public Law 110-343, 110th Congress) which is also admissible as a public record. Courts routinely take judicial notice of data, pronouncements and publications issued by

the government., such as *Environmental Protection Agency Research, Nebraska v EPA,* 331 F 3d

995, 998 (D.C. Cir 2003), State Department travel warnings, *Parsons v. United Tech. Corp.*, 700

A 2d 655,665 (Conn 1997) and a federal fisheries management plan approved by formal rule,

*City of Charleston v A Fisherman's Best, Inc*., 310 F 3d. 155, 172 (4th Cir. 2002).  Courts are also

likely to take judicial notice of relevant newspaper articles, *The Washington Post v. Robinson,*

935 F. 2d 282, 291-92 (D.C. Cir 1991) and historical information contained in authoritative

publications, such as a text history of Lincoln Center,   311 F. 3d 540 n. 1.  (2d Cir 2002).

Courts have increasingly cited information found on the internet.  As with hard-copy

publications, courts are most willing to take judicial notice of information found on government

websites such as the time of sunrise found on the website of the *U.S. Naval Observatory, U.S. v*

*Bervaldi*, 226 F 3d 1256, 1266 n.9  (11th Cir 2000).

Finally, it is doubtful that the United States of America who is prosecuting this case will

argue that any of the documents which the defense seeks to have admitted by this motion are

either inaccurate or untrustworthy.

In order for Nimboko Miller to receive a fair trial and so the jury should have a full

understanding of all the circumstances surrounding the bank loan that is the subject of this case,

the court should admit Exhibits A through E.

Respectfully submitted,

*Marion Seltzer*,

Attorney for the defendant Nimboko Miller
1725 York Avenue, Suite 16B
New York NY 10128
(212) 289-8798

MarionSeltzer23@gmail.com

7