MARION A. SELTZER
Attorney at Law
1725 York Avenue -Suite 16B
New York, New York 10128

Telephone:   (212) 289-8798                    E-mail: MarionSeltzer23@gmail.com
                    (561) 508-3951


March 14, 2018


Honorable Ann M. Donnelly
United States District Court - EDNY
225 Cadman Plaza East
Brooklyn, New York 11201

BY ECF

Re: USA v Nimboko Miller, 16 CR 34 (AMD)


Dear Judge Donnelly,

        This sentencing letter is submitted on behalf of Nimboko Miller.   It is my hope that after reading the PSI Report and  this letter you will determine that the correct sentence in this case would be a period of probation.

BACKGROUND

        Mr. Miller, a former transit worker, was found guilty of Counts 1 and 8 --Conspiracy to Commit Bank Fraud and Bank Fraud.  He has no Criminal History points.  He is 45 years old and has two children with his wife Latanya Bell, the youngest, a daughter named Laylah is 8 years old. Ms. Bell has never been employed.

        Mr. Miller was employed by the MTA until 2014 when he sprained his back.  Subsequent to that, he experienced severe heart problems suffering from heart failure and severe left ventricular systolic dysfunction (PSI ¶ 63-66) which caused him to be hospitalized on several occasions.  He advises me that he has been cleared to return to work but is still negotiating with the Transit Authority as to what position he would be given.

        Mr. Miller advises me that the family is in dire financial condition and that he has been

1

unable to make the mortgage payments on his home for almost two years. He is in "pre-foreclosure" discussions with his bank but he hopes that if he can get his TA job back he will not lose his home. His original mortgage was over $200,000 but because of non-payment, late fees and interest that is due, that amount is approaching $300,000. The family is living on income from rental money received from an apartment located in their house.

### *GUIDELINE CALCULATIONS:*

The defense objects to the Sentencing Guideline calculations. Specifically we suggest that the appropriate Total Offense Level should be Level 7 . Paragraph 34 of the PSI calculates that this case involved a loss of more than $250,000. In fact, Wells Fargo suffered no loss at all.

(1) In 2008, Wells Fargo Bank loaned Andrea Murray $435,000 to purchase 309 Beach 88th Street. In 2017-18 the property was valued in excess of $440,000. In 2017-18 Wells Fargo sold the property to the Federal Home Loan Mortgage Corporation for $385,000. It is a fair inference that the lower value was accepted for expedience reasons. The selling price was well below the actual value of the property (Exhibits A -C) because a relationship seems to exist between Wells Fargo and the Federal Home Loan Mortgage Corp. While these numbers indicate a technical loss of $50,000 to the bank, the "loss" resulted because the bank accepted less than market value from a buyer. Under all the facts and circumstances it would be unfair to attribute the difference to the defendant.

(2) In late October 2008, Wells Fargo entered into an agreement with the Treasury Department to participate in its Troubled Asset Relief Program (TARP). Under this program, Wells Fargo received $25 billion in exchange for preferred stock. The federal bailout of Wells Fargo resulted in it being in better financial condition than before the mortgage crisis occurred.

(3) Because of the negligence and bad faith exhibited by Wells Fargo in the execution of this and many other loans, the bank should not be deemed to have suffered any loss. As discussed in our Memorandum of Law filed on June 29, 2017 and the exhibits attached to that motion (Docket # 71-2 *et. seq.),* and because of the negligence and bad acts of Wells Fargo and its employees, the loan should never have been extended to Andrea Murray. These bad acts included the fact Wells Fargo ignored the documented evidence that it had received that Ms. Murray had recently declared bankruptcy and the evidence that existed in the Wells Fargo files of this loan that Wells Fargo failed to properly check Ms. Murray's employment references and bad credit report.

Moreover, in a stipulation entered into between Wells Fargo and the United States of America in the SDNY case of *USA v. Wells Fargo Bank and Kurt Lofrano,* 12 CV 7527 (JMF) (SDNY) Wells Fargo Bank admitted that

*During the period October 2005 to December 2010, Wells Fargo quality*

> *assurance reviews identified more than 2,900 additional FHA loans containing material findings per Wells Fargo Bank's internal application of the term "material."... During the period of October 2005 through December 31, 2010 based on its self-reporting policy... Wells Fargo bank did not report to HUD the majority of FHA loans that Wells Fargo Bank's quality assurance reviews had identified to have material finding per Wells Fargo's internal application and definition of the term "material." When certain of these loans defaulted, insurance claims were paid out by Mutual Mortgage Insurance Fund.*

Moreover, in the Stipulation and Order entered into by the parties of that lawsuit the parties agreed that

> *...In addition to a violation of various federal acts, Wells Fargo Bank had also committed breaches under unjust enrichment, indemnification, fraud, money had and received, misrepresentation, deceit, mistake of fact, breach of fiduciary duty, conspiracy and aiding and abetting any of the foregoing."*

In return for this stipulation and a fine of $1.2 *billion,* the United States of America forgave Wells Fargo of all violations it had committed.

Paragraph 24 of Nimboko Miller's PSI reveals that Wells Fargo Bank has failed to respond to the request by U.S. Probation for an affidavit of loss. It is a fair inference that Wells Fargo Bank has suffered no loss -- Wells Fargo Bank received compensation from Mutual Mortgage Insurance Fund and from TARP. Finally, because of their admitted bad behavior in extending this particular loan and many others  it would be  inappropriate under all the facts and circumstances for this court to find any loss to Wells Fargo Bank or to order any payment of restitution to The Bank.

For all these reasons the Total Offense Level in this case should be Level **7** or 0 -6 months.


SENTENCING  FACTORS - U.S.C. § 3553(a)

In accordance with the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed.2d 621 (2005), and the Second Circuit's decision in *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005), the sentence to be imposed should be reached through consideration of all of the factors identified in 18 U.S.C. §3553(a), including the advisory Sentencing Guidelines established by the United States Sentencing Commission (the "Guidelines"). Thus, the sentence to be imposed on Nimboko Miller should be the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for-- (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;
(5) any pertinent policy statement ... [issued by the Sentencing Commission];
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

    A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See *Crosby*, 397 F.3d at 114-15. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," *Kimbrough v. United States,* 552 U.S. 85, 128 S. Ct. 558, 571, 169 L. Ed.2d 481 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in 3553(a).

 For the reasons discussed below, a sentence of probation is warranted.

(1)    THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

    I suggest that this is not an ordinary bank fraud case. A usual bank fraud would be an improper attempt to gain money *and* an intent to defraud the bank of its money by failing to pay it back.  The multi-family house that was purchased in this case was purchased with the intent of keeping and maintaining the property and to earn money to repay the loan by renting it to tenants. Loans of this sort were obtained by "straw buyers" because the borrowers were unable to obtain a mortgage themselves,  not because they intended to steal from the bank While it is true that there was false  information on the loan application submitted by Andrea Murray in applying for this loan and that Mr. Miller has been convicted of aiding and abetting in that application, there is still some question as to who added the false information to the application, who if anyone provided the $25,000 deposit on the house, and whether or not Wells Fargo Bank bears *some* responsibility in giving the loan. If not for the bank crisis and recession of 2008 and thereafter, this case might never have occurred.

    To some extent there is an analogy to be made regarding a parent who buys a house for a child who does not have sufficient credit to get a mortgage.  The parent is not intending to defraud the bank when they stte on the mortgage application that they will live in the houseand pay the mortgage.  It I the expecttion that the mortgage will be paid not by them but by their child who will

live in the house.  However, when the parents sign the mortgage documents and obtaining a deed for a house that the parents know they will not be occupying, and when it is the intention that their child live in the house and make the mortgage payments, a fraud (albeit an understandable one) has occurred.  In many ways such a fraud is analogous to the fraud involved in this case.  During the earlier part of this century when real estate values were sky rocketing,  everyone, including the banks,  expected that home values would increase and that profits would be made.  Unfortunately when the housing bubble burst, both homeowners and the banks suffered.

I mention this not to exculpate or exonerate anyone, but only as it relates to the peculiar *nature and circumstances of this particular offense* that is a criteria in 18 USC § 3553 (a) (1) that the court is required to consider.


(2) THE NEED FOR THE SENTENCE IMPOSED

(A) TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE;

While bank fraud is a serious offense, a sentence of probation will still promote respect for the law and provide just punishment.  The horror and heartache from an arrest and trial  that comes to any family and here certainly to Mr. Miller and his family, cannot be overlooked, especially when the arrest occurred almost eight years after the incident for which he was charged. For a 45 year old man whose only other interaction with the criminal justice system involved an incident at a subway station when he was 17 years old, a felony conviction and all that goes with it is certainly punishment enough.  Incarcerating a morbidly obese individual such as  Mr. Miller who has had a erious heart condition will incur more punishment than for a normally healthy man.

(B) TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT;

After reviewing all the facts, the court should be convinced that it is not necessary to incarcerate Mr. Miller.  No one will be encouraged to commit a similar crime if the court does not send Mr. Miller to jail.

When Mr. Miller was arrested it was the government's hope that he could provide information that would lead to the arrest and conviction of the lawyers, title companies, brokers, bank officials and others that might have been committing illegal acts in regard to numerous fraudulent bank loans.  However, Mr Miller knew so little that he was not in a position to assist the government.


(C) TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT;

As previously discussed, Mr. Miller's only interaction with the criminal justice system was

three decades ago as a youth.   He has lead a law-abiding life, supported his family, worked for the Transit Authority of the City of New York (MTA) and is a religious member of his community. There is no reason to believe that he will ever violate any law in the future.

(D) TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER;

Although Mr. Miller suffers from medical problems relating to his heart condition and his extreme weight they will only be exacerbated if he is incarcerated.

(3 ) THE KINDS OF SENTENCE AND THE SENTENCING RANGE;

The court has discretion to impose a sentence between 0 and 30 years.  Depending upon the sentencing range that is to be determined by the court, it may well fall within a sentence of probation.  If not, considering the criteria set in § 3553(a) a sentence outside the guideline range would be appropriate.

(6)  THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT;

On February 15, 2018 this Court Sentenced the co-defendant Christopher Scott who had been released since the date of his arrest to "time served." The third co-defendant, Christopher Scott Jr. has not yet been sentenced. Other than the fact that the Scotts had been charged with obtaining two fraudulent bank loans for two houses located on the same street as the house involved in Mr Miller's case, counsel is not familiar with the specific facts regarding each of their sentences.

Under all the facts and circumstances, and in order to avoid any unwarranted sentence disparity among the defendants, I urge the court to impose a sentence of time served and probation. This  would be sufficient but not greater than the time necessary to promote the goals of justice and the sentencing guidelines.

Respectfully submitted,

*Marion Seltzer*

Copies: AUSA  Nomi Berenson, et. al. by ECF
        U.S. Probation Officer Patricia A. Sullivan