

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

TJS:NDB/BAS
F. # 2014R01855

*271 Cadman Plaza East
Brooklyn, New York 11201*

March 29, 2018

By Email and ECF

The Honorable Ann M. Donnelly
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Nimboko Miller
               Criminal Docket No. 16-34 (AMD)

Dear Judge Donnelly:

      The government respectfully submits this letter in advance of sentencing in the above-referenced case, which is scheduled for April 4, 2018. For the reasons set forth below, the government recommends that a sentence within the advisory United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 37 to 46 months' imprisonment be imposed in this case.

I.    Background

      Between 2006 and November 2008, the defendant Nimboko Miller and others, participated in a mortgage fraud scheme to purchase a property in Far Rockaway, Queens, located at 309 Beach 88th Street (the "property" or "309 Beach"). The defendant recruited a nominal purchaser, or "straw buyer" ("CC-1"), and used the straw buyer's information to purchase the property by submitting a mortgage-loan application to Wells Fargo Bank, N.A. ("Wells Fargo") that contained false statements. The straw buyer was never intended to be the beneficial owner of the property. See Presentence Investigation Report ("PSR") ¶ 7.

      In early 2008, when the defendant was employed at the Metropolitan Transit Authority ("MTA"), a colleague introduced him to CC-1, who also worked at the MTA and whom the defendant asked to serve as a nominal purchaser for a property on Long Island. PSR ¶¶ 16-17. The defendant told CC-1 that, following the purchase of the Long Island property, the defendant would buy it back from CC-1. PSR ¶ 17. In exchange for CC-1's agreement to serve as the straw buyer, the defendant agreed to pay CC-1 approximately

$5,000. (Trial Transcript ("Tr.") 257:7-15.) The defendant asked CC-1 to provide documentation with her personal identifying information on it, including her tax returns, pay stubs and driver's license, which CC-1 collected and allowed the defendant to copy. A few weeks later, the defendant told CC-1 that the deal for the Long Island property had fallen through. PSR ¶ 20. Thereafter, the defendant told CC-1 that he had found another property—309 Beach—to purchase and for which CC-1 could be the nominal buyer. Id.

In approximately June 2008, the defendant presented CC-1 with a loan application for 309 Beach. PSR ¶ 21. He instructed CC-1 to sign the loan application and supporting paperwork, which CC-1 did. The loan application contained multiple false statements, among them that CC-1 was to be the beneficial owner of the property as well as false statements concerning CC-1's employment history and savings. Id.

Three days after the closing, the defendant was issued a check for $22,500 payable to his business, Bigg Silver, Inc. ("Bigg Silver"). That money represented proceeds the owner of 309 Beach had received as a result of the sale. The proceeds were funneled through three corporations before being paid to the defendant's company. The defendant then endorsed and cashed that check. (Government Exhibit ("GX") 17A.) He did not pay CC-1 for serving as a straw buyer. He did not purchase the property back from CC-1.

Despite assuring CC-1 that he would make monthly mortgage payments, the defendant made only one payment of less than $3,000 toward repaying the mortgage, PSR ¶ 22. (See e.g., GX 11A.) Additionally, the defendant rented the property and earned rental income into 2010, during which time he deposited $22,810.65 in rent checks, PSR ¶ 26, written in CC-1's name, into his Bigg Silver bank accounts. (See e.g., GX 8C.) He did not use that money to repay the mortgage or even to maintain the property for his tenants. (Tr. 454:6-9.) Ultimately, the mortgage was not repaid, the bank lost hundreds of thousands of dollars.

In July 2017, at trial, the defendant chose to testified and then perjured himself in an effort to avoid responsibility for his crimes. Among the false testimony the defendant provided to the Court, he lied about the documents he obtained from CC-1 in furtherance of the bank fraud conspiracy (Tr. 635:10-19 and 735:4-7), his physical condition and ability to perform manual labor (e.g. Tr. 707:11-708:6 and 751:12-23) and the $22,500 check to Bigg Silver. (Tr. 742:4-743:9.)

On July 17, 2017, following trial, the defendant was convicted of Counts One and Eight of the indictment, the only counts at issue at trial,[1] which charged that between 2006 and November 2008, the defendant conspired with others to defraud Wells Fargo, in violation of Title 18, United States Code, Section 1349, and that between 2008 and October 2008, the defendant defrauded and attempted to defraud Wells Fargo, in violation of Title 18, United States Code, Section 1344. PSR ¶¶ 1-2.

---

[1] The remaining counts in the indictment either were dismissed on the government's motion or did not name the defendant. PSR ¶ 3.

II. <u>Guidelines Calculation and PSR Corrections</u>

The government submits that the Guidelines calculation set forth below is accurate:

| | |
|---|---:|
| Base Offense Level (§§ 2X1.1(a); 2B1.1(a)(1)) | 7 |
| Plus: Loss exceeded $250,000 (§ 2B1.1(b)(1)(G)) | +12 |
| Plus: Obstruction of Justice (§ 3C1.1) | +2 |
| Total: | <u>21</u> |

The total offense level is 21, which, based on a Criminal History Category of I, <u>see</u> PSR ¶¶ 42-48, carries an advisory Guidelines sentencing range of 37 to 46 months in custody.

With respect to the PSR, the government notes the following corrections:

- Paragraphs 29 and 37 do not take into account or reflect the defendant's testimony at trial, which constitutes perjury. Pursuant to Section 3C1.1 of the Guidelines, two points should be added to the Guidelines calculation. This proposed amendment to the PSR also necessitates corresponding modifications to paragraphs 38, 41 and 85.

- Paragraph 30 errantly states that the defendant accepted responsibility for the offense conduct and that a reduction is warranted.

III. <u>Argument</u>

The Guidelines range accurately reflects the seriousness of the defendant's conduct, provides just punishment, promotes respect for the law and effects adequate deterrence. <u>See</u> 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), (a)(2)(B). As this Court presided over this trial in July, the government will refrain from rehashing every detail of this case here. Nevertheless, it is worth noting that the defendant participated in this mortgage fraud scheme defrauding a bank of hundreds of thousands of dollars and ruining the credit of a co-conspirator, all for personal gain.

Moreover, the instant offense conduct was not isolated. To the contrary, the defendant's text messages with the straw buyer (Exhibit A, attached to the government's October 21, 2016 filing), among other evidence, make plain that the defendant used the straw buyer's personal information to purchase another property. This time, the purchase took place without the straw buyer's knowledge or consent. That identity theft is the reason why, years later, the defendant continued engaging in communications with the straw buyer about that other property. That evidence directly bears on the defendant's culpability and underscores the need to promote respect for the law.

Finally, the defendant has not accepted any responsibility, expressed remorse or even acknowledged the harm that his actions caused others. With respect to deterrence, the sentence imposed should send a message to the community that this type of criminal conduct is serious and will be punished with a significant period of incarceration. Such a sentence will make plain that mortgage fraud, which damages financial institutions and communities alike, will not be tolerated.

Additionally, the defendant's sentencing letter advances a number of arguments. None has merit. First, in challenging the loss amount and the Guidelines calculation, the defendant blames the mortgage lender. As the Court previously addressed and rejected as irrelevant the defendant's argument that the mortgage lender was complicit in the bank fraud, see Order dated July 5, 2017, the government does not address that argument here. Second, to the extent the defendant argues "this case might never have occurred" . . . "[i]f not for the bank crisis and recession of 2008," the defendant has it backwards. If not for the defendant and others who acted similarly, the bank crisis and recession may never have occurred. Third, the "horror" and "heartache" of the defendant's arrest and trial do not satisfy the need to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense. The defendant defrauded a bank of hundreds of thousands of dollars. He did so for greed and pocketed over $40,000 from the fraud and his subsequent rental of the property. Moreover, as noted above, the defendant took the stand at trial, swore to tell the truth under penalty of perjury, and then provided false exculpatory testimony. The defendant has done nothing to show respect for the law.

IV.     Forfeiture and Restitution

With respect to forfeiture, the government respectfully requests, pursuant to Title 18, United States Code, Section 982(a)(2)(A), and Title 21, United States Code, Section 853(p), and as set forth in the indictment, a forfeiture order in the amount of $45,310.65, which is the amount of money that the defendant obtained or derived from the offense conduct.

The government also respectfully requests, pursuant to Title 18, United States Code, Section 3663A, a restitution order in the amount of $498,367.77, for the loss incurred in connection with 309 Beach. The loss calculation for this property is enclosed with this letter as an Exhibit. A proposed order of restitution is enclosed and filed under seal.

IV. Conclusion

   For the foregoing reasons, the government respectfully requests that the Court impose a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing, see 18 U.S.C. § 3553(a)(2), which, in this case, is within the applicable Guidelines range of 37 to 46 months in custody.

                Respectfully submitted,

                Richard P. Donoghue
                United States Attorney

        By:  /s/ Nomi D. Berenson
           Nomi D. Berenson
           Assistant United States Attorney
           (718) 254-6308

           Benjamin A. Saltzman
           Trial Attorney, Fraud Section
           (202) 514-0337

cc:  Clerk of the Court (AMD) (by ECF)
   Marion A. Seltzer, Esq. (by ECF)
   Probation Officer Patricia Sullivan (by email)